Caleb H. Bradley, Exr. of A. Taylor Hoopes, deceased, Caleb H. Bradley, Samuel H. Hoopes, Samuel H. Hoopes, Adm'r of Hannah McNally, deceased, Jerusha McClaskey, George L. Harris, and W. S. Harris, Guardian of the minor children of Wm. Cooper Wetherill, deceased, Proponents of said Will and Codicil, Appellants, *v.* Thomas W. Pierce and E. Malin Hoopes.

*Will—Issue devisavit vel non—Codicil.*

On an issue to determine the validity of a codicil to a will, the alleged signature of the testator was not attested by any subscribing witness. The evidence as to the genuineness of the signature was conflicting. Issues were also raised as to the testator's testamentary capacity, and as to whether he had been subjected to undue influence. The court instructed the jury that if they found that the signature to the alleged codicil was not genuine, their verdict should be for the defendants in this issue, and it would not be necessary for them to consider and determine any of the other issues in the case. The jury found specifically that the testator did not execute the alleged codicil. There was evidence, though contradicted, to justify this finding. *Held,* that a judgment on the verdict should be sustained.

Argued Feb. 9, 1897. Appeal, No. 568, Jan. T., 1896, by plaintiffs, from judgment of C. P. Chester Co., Oct. T., 1895, No. 60, on verdict for defendants. Before STERRETT, C. J., GREEN, WILLIAMS, McCOLLUM, and FELL, JJ. Affirmed.

Issue devisavit vel non. Before HEMPHILL, J.

The facts appear by the charge of the court below, which was in part as follows:

Now, gentlemen of the jury, in this issue thus framed and sent into the common pleas for the purpose of determining the questions I have read, the plaintiffs here are Mr. Bradley, Mr. Harris, as guardian, and several others. The defendants are Thos. W. Pierce and E. Malin Hoopes. [It is incumbent upon the plaintiffs to satisfy you affirmatively of the questions here in issue. They being the plaintiffs in the case the burden is upon them to satisfy you by testimony produced before you that they are entitled to have these questions answered affirma-

tively, or in their favor.  Failing in that, the defendants would
be entitled to your verdict.] [2]  Now, these questions, six in
number, which you have heard me read, and of which you will
have a copy to pass upon, may, I think, be presented to you for
your consideration and determination under three heads or prop-
ositions, as follows :

1. Was the alleged codicil of August 15, 1891, executed by
the said A. Taylor Hoopes ?

2. Had A. Taylor Hoopes testamentary capacity on August 15,
1891, when he executed the alleged codicil to his will of Jan-
uary 27, 1888 ?

3. Was either the alleged will of January 27, 1888, or codicil
thereto of August 15, 1891, procured to be made by A. Taylor
Hoopes by undue influence, fraud or imposition ?

I think the six questions presented here may be considered
under these three heads.  The first question raises one entirely
of fact.  [Was the alleged codicil of August 15, 1891, executed
by the said A. Taylor Hoopes ?  The burden, as I have already
said to you, is upon the plaintiffs.] [3]

[There was but one person present with the testator at the time
of the execution of that codicil, and that was Mr. Caleb H. Brad-
ley.  He alone, if anyone, saw Taylor Hoopes sign his name to
the document here presented.  But the burden being upon Mr.
Bradley he did not rest his case upon his testimony alone, for
he not only had the burden as plaintiff but he also had an inter-
est at stake in the result; and so he has attempted to strengthen
his testimony by calling witnesses here to endeavor to satisfy
you that that is the signature of A. Taylor Hoopes.  I need not
recall or pass over the names of the witnesses.  They have been
quite numerous, some with large and some with less experience
as to the number of signatures they had seen him write, and as
to the number of signatures they had seen.  Mr. Bradley has
called these witnesses to corroborate or strengthen the testimony
he has given to you, in which he says he saw A. Taylor Hoopes
sign that very signature on that very paper.  And in regard to
the will itself, Mr. Bradley is the only witness present when the
will was prepared.  Joshua, as I recall the testimony, was in
and out.  The two subscribing witnesses did not, as I recall it,
see A. Taylor Hoopes sign the will.  They came in after the
will had been drawn by Mr. Bradley, and had already been

signed by Mr. Hoopes, and they say that the paper was so folded that they were not able to see what its contents were, Mr. Bradley explaining that Mr. Hoopes did not want it to be known what the contents of his will were, and they were asked to sign it under those circumstances. [Thus you see the testimony produced by the plaintiffs to satisfy you that A. Taylor Hoopes executed this will consists of Caleb H. Bradley and the other witnesses called for the purpose of proving his signature.] [4]

Now the defendants, on the other hand, charge that this will was never executed by Mr. Hoopes. Their position, as I understand it, is not that there was never a will executed on or about January 27, 1888, but that this is not that will.

. It seems to be conceded that Mr. Bradley was called in and prepared a will at or about that time, that subsequent to that time, in May of the same year, another will was prepared by Abner Pyle, and that subsequent to that the codicil of August, 1891, was prepared. The effect would be, the will of May, 1888, standing without any subsequent revocation by way of another will or codicil to a former will, would have revoked and made null the will of January 27, 1888. It was dead from the time that the will of May, 1888, was executed, until that codicil of August, 1891, was written. But that codicil, if genuine, renewed, gave new life to the will of January 27, 1888; provided that was the will that was executed by A. Taylor Hoopes and witnessed by these gentlemen. Now, gentlemen, the defense tell you that although there was such a will drawn at or about that time, the will presented here is not that will, and they have attempted to satisfy you that it was not, by declarations made by A. Taylor Hoopes, and by witnesses called as to his signature; men who are acquainted with it, and by one expert whom they had here upon the stand. Of course testimony of this character as to the signature of another, the value of it must necessarily depend largely upon the experience of the witness testifying, his familiarity with the handwriting of the party whom he is called to testify to, and his familiarity in the comparison of handwritings. A man who sees another sign his name but once could not, it would hardly be believed, form a judgment as reliable as one who had seen him sign it frequently, week in and week out, for perhaps months and years. So that in passing upon the testimony of the various witnesses

on one side and the other, you will to some extent be guided by the experience and by the opportunities that the party so testifying has had of judging of A. Taylor Hoopes's signature. Necessarily this character of testimony requires the production of many signatures and many witnesses, and takes considerable time, because a forgery intended to deceive, intended to perpetrate a fraud or a wrong, is necessarily a simulation, it is made as close as possible to the original. If that were not the case, if it was apparent and readily detected, the object of the forgery would at once be defeated. So I say it is for that reason that so much time is necessarily consumed in the examination of those who are called to testify to the handwriting, and in the comparison of the handwritings, because a forgery, if it be such, is necessarily as close a simulation as the forger can make it to the genuine signature. Now I do not know that I need dwell further on that. That, as you have learned, is the material question in the case. It seems to be conceded to be the pivotal question in the case by both sides. There is collateral evidence, of course, bearing upon the question, which has already been discussed at length before you; and you will have, in addition to the comments of counsel to aid you, the signatures unquestionably genuine, not only by A. Taylor Hoopes, for comparison with that on the codicil, and of the will, but also of the witnesses to the will, Mr. Manley and Mr. Grubb. Whether there was any change in the signature of A. Taylor Hoopes between the date of the first will and the last you will judge of from the signatures that will be placed before you, and from the testimony that you have heard; the drift being, as I recalled it, that with increasing years there came increasing infirmities, that the tremor that he had, commenced about the time or shortly after, the accident of the runaway horse and increased steadily, as the doctor said was naturally the case, with his increasing years. That will also be one of the matters which will aid you in determining whether that is A. Taylor Hoopes's signature to the codicil or not.

Now the second question or head, under which I have attempted to briefly review the six that are here for you to pass upon, is, had A. Taylor Hoopes testamentary capacity on August 15, 1891, when he executed the alleged codicil to his will of January 27, 1888. The rule of testamentary capacity as laid

down by our Supreme Court is, "that a man of sound mind and disposing memory is one who has a full and intelligent knowledge of the act he is engaged in, a full knowledge of the property he possesses, an intelligent perception and understanding of the disposition he desires to make of it and of the persons and objects he desires shall be the recipient of his bounty. It is not necessary that he should collect all these in one review. If he understands in detail all that he is about, and chooses with understanding and reason between one disposition and another, it is sufficient for the making of a will. To sum up the whole in the most simple and intelligent form, were his mind and memory sufficiently sound to enable him to know and understand the business in which he was engaged at the time when he executed that will." That is the rule as laid down more than once by our Supreme Court as to the test of testamentary capacity. And testamentary incapacity, says the same court, must be established by evidence of the most unexceptional kind and character, bearing on the very act of disposition and confined to the time of execution. Have the plaintiffs, by this character of evidence, satisfied you that A. Taylor Hoopes had testamentary capacity when he executed the codicil on the 15th day of August, 1891? Now I need not review the testimony on that score. That has been commented upon, and you have heard it, and it is as fresh in your minds as it is in my own. Jerusha McClaskey, who lived in the house with him during the whole period from the time of the execution of the first will down to the day of his death, and George L. Harris have both testified as to his condition. So has Mr. Bradley, and a number of neighbors have testified on behalf of the plaintiffs, and they have described to you his condition, both physical and mental. And you have had on the other side the testimony of Mr. Pierce and a number of others whom I do not now recall, who have testified on behalf of the defendants. Have the plaintiffs, upon whom the burden is, satisfied you that at the time he executed the codicil of August 15, 1891, he had testamentary capacity? If he had you will answer in their favor, in the affirmative, the question covering that. If he had not you will answer in the negative, in behalf of the defendant, the questions that cover that, in the issue framed for your determination.

Now we come to the third head under which I have collected

these questions,—was either the alleged will of January 27, 1888, or the codicil thereto, of August 15, 1891, procured to be made by A. Taylor Hoopes by undue influence, fraud or imposition? Undue influence may be defined to be whatever destroys free agency and constrains the person whose act is brought in judgment to do what is against his will, and what he would not have done if left to himself. Generally it is incumbent upon the party alleging undue influence to prove it, but where one acting in a fiduciary or confidential capacity procures a considerable benefit by reason thereof, the rule is reversed and he is required to prove that no undue influence was exerted to secure that benefit. Thus one who prepares and directs the execution of a will occupies a confidential relation towards the testator, and if he takes a considerable interest under it it is always ground of suspicion, and makes it obligatory upon him to show by clear and satisfactory proof that the testator fully understood the testamentary disposition of his property as expressed in the will or codicil, and until such proof is made the law presumes the will or codicil invalid. This, gentlemen, is the law as I understand it, and will be your guide. If I am in error I will be corrected by a superior tribunal. But that, as I understand it, is the rule, that where one acting in a confidential capacity through such action derives a substantial benefit, the law casts such suspicion upon the transaction as throws the burden upon him of showing by clear and satisfactory proof that the testator understood the testamentary disposition of his property as expressed in the will or codicil. Until he has so satisfied you he cannot recover, he cannot derive any benefit, and the codicil or will so made will be treated as invalid.

Now have the plaintiffs, because the burden is upon them—has Mr. Bradley, who was the scrivener who drew his will, and who, as you have learned, takes a substantial portion of the estate under it, is a beneficiary to a considerable extent under the will —has the proof he has produced here satisfied you that the testator understood the testamentary disposition he was making of the property at the time this codicil was executed? If he has failed to do so, then the questions in the issues sent here for your determination will be answered in the negative. If he has satisfied you, then they will be answered in the affirmative. Thus, gentlemen, you see that in this case one of the most

material—yes, I can say, I think, without hesitation, the most material witness in it is Caleb H. Bradley. And he has upon him, as one of the plaintiffs, the burden of satisfying you that the issue sent here shall be answered affirmatively. Failing in that, or if the testimony he presents is overcome, in your judgment, by that presented by the defense, then your answers will be in the negative or in favor of the defendants. It is proper for me to say to you, Mr. Bradley being such an important witness, that in weighing his testimony you will bear in mind the fact of the interest that he has at stake, and say in your judgment how far that is calculated to swerve him from telling that which is strictly correct and true upon the witness stand. And Mr. Pierce, I may say likewise of him, although his interest may not be perhaps so great, because it has not developed what it is ; but we know he is interested as a legatee in another will, which, if this codicil shall fall, will inure to his benefit—he has an interest when he goes upon the witness stand to testify, and you will say how far, in your judgment, that interest may have swerved him from the strict line of truth, if at all. The credibility, not only of the witnesses that I have referred to on the one side and the other, but of all the witnesses, is for the jury. It is for that purpose that they are brought before you.

It is always more desirable, as everyone that has had anything to do with the trial of cases knows, to have the witnesses appear upon the witness stand rather than hear their testimony read from depositions, for the simple reason that a man oftentimes is better able to judge of the credit to be given statements of witnesses when he has the opportunity of seeing them on the stand under examination and cross-examination. Now Mr. Bradley's credibility has been attacked by the defense. Aside from his interest they have endeavored to satisfy you that he is not to be given credit, and for that purpose they have produced here before you a letter written, without date, to George L. Harris, in which he recites certain dates and certain matters to Mr. Harris and asks him if they be true, to commit them so that he would be enabled to testify. I do not pretend to give the language, but you have heard it read. He asks him, if they be true, to commit them so that he would be enabled to testify so as not to conflict with his, Mr. Bradley's testimony ; at least Mr. Bradley, according to my recollection, testified when upon

the stand that to be the object of his writing the letter that he wanted George to go over these matters so that he would not contradict him.  That, I understand, is produced here in order to attack the credibility of Mr. Bradley.  The defendants ask you to say from that that a man who would attempt to coach another witness, and instruct him what he is to testify to for the purpose of not contradicting him, is unworthy of unbelief.  You will say whether he is or not.  Mr. William Leike and Mr. Thomas W. Pierce, are also called to contradict Mr. Bradley on another matter.  [Mr. Leike, you will recollect, tells you he was at A. Taylor Hoopes's place on the 15th day of August, 1891, when this will was said to have been written; that he was there from 11 o'clock in the morning until half past 4 in the afternoon of that day, and that he saw neither Mr. Bradley there, nor did he see Mr. A. Taylor Hoopes; that the only person he saw was Jerusha McClaskey; that she told him that George Harris had taken Taylor away to see a piece of woodland, I think, had taken him away for some purpose or other, and that Jerusha was sick in bed.

Now, of course, the value of this contradiction depends upon the accuracy with which Mr. Leike is able to fix the date.  He has endeavored to satisfy you, by telling you how he fixed it, that he is correct.  You will say whether he is or not, because his memory is as liable to be faulty as I presume any one else's, and dates are matters which it is difficult for a man to fix unless he has some guide.  He, however, has attempted to satisfy you by giving you his guide.  He says he came here on a certain date to pay his tax, that a certain length of time before that he had some threshing to do about his home, and he came down here on a certain day after the threshing, and before the payment of the tax, and that would bring it on the 15th day of August, 1891.  Mr. Pierce is called in to testify, not as to his presence out there, but as in corroboration of the date; and Mr. Pierce tells you that Mr. Leike was in his office on that day, and he told him he was going out to see A. Taylor Hoopes, Mr. Pierce having informed him of his condition.  You will say whether that satisfies you that he was out there on the 15th day of August, 1891.  As I say, this is done for the purpose of affecting the credibility of Mr. Bradley, who testified that he was there, as I recall it—that he went out there—at or about noon

of that day, or shortly after, and left there about dusk, or about 6 o'clock.] `[5]` [Another matter in which Mr. Bradley is contradicted by Mr. Pierce, is as to the declaration of A. Taylor Hoopes that the old will was destroyed. Mr. Bradley testified that this is that will. If Mr. Pierce is to be believed, and if A. Taylor Hoopes was reliable when he made that statement, of course this could not be the will of January 27, 1888, or the will prepared by Mr. Bradley at that time. The testimony, however, is conflicting. You will recall that Mr. Bradley has given to you the history of this will as far as he knew it, where he left it, where he wrote it in 1888, where he found it after Amos McNally's death, or about the time of his death, what he did with it subsequently, taking it out there, and leaving it, and where he found it when he came to write the codicil. Mr. Pierce also makes the statement that Taylor Hoopes said to him that he was glad Bradley would not have anything to do with his will.] [6]

Verdict and judgment for defendants. Plaintiffs appealed.

*Errors assigned* were (2–6) above instructions, quoting them.

*W. S. Harris,* for appellants.—It is settled with us that after proof of the execution of a will by the subscribing witnesses, a plaintiff who sustains a will may rest on the prima facies of his case, and until the will has been assailed, before he calls witnesses to sustain the competency of the testator: Titlow v. Titlow, 54 Pa. 222; Steadman v. Steadman, 14 Atl. Rep. 409; Forney's Est., 161 Pa. 214.

The natural object of the testator's bounty, should not have the burden put on him to show that the transaction was fair, if he writes a will in which he gets a legacy of any consequence: Clark v. Clark, 174 Pa. 309.

A charge whose tendency as a whole is to belittle and prejudice one side, and which is not in expression and tone a judicial presentation of the case, is error: Phila. Trust Co. v. Phila. & Erie R. R., 177 Pa. 38; Lerch v. Bard, 177 Pa. 206.

*J. Frank E. Hause, William M. Hayes* and *Alfred P. Reid,* for appellees, were not heard, but in their printed brief said.—The burden of proof to establish the genuineness of a paper is upon

him who asserts it: Huston v. Ticknor & Co., 99 Pa. 231; Price v. Price, 156 Pa. 617; Caldwell v. Anderson, 104 Pa. 199; Boyd v. Boyd, 66 Pa. 283; Yardley v. Cuthbertson, 108 Pa. 395; Darlington's Est., 147 Pa. 624; Crothers v. Crothers, 149 Pa. 201; Blume v. Hartman, 115 Pa. 32; Wilson's App., 99 Pa. 545; Wilson v. Mitchell, 101 Pa. 495; Armor's Est., 154 Pa. 517; Douglass's Est., 162 Pa. 567.

PER CURIAM, March 1, 1897:

This issue, sent by the orphans' court to the common pleas, was for trial by jury of six questions specified therein, the second of which is: "Whether or not the said alleged codicil, dated August 15, 1891, was executed by the said A. Taylor Hoopes?" Another is: "Did A. Taylor Hoopes direct and dictate all of the provisions of the paper writing of January 27, 1888, and the codicil of August 15, 1891?" As will be seen by reference to the others, they involve questions of testamentary capacity, undue influence, fraud and imposition, as bearing on the execution as well as the validity of said codicil.

On the trial, considerable testimony, bearing more or less directly on one side or the other of said questions, was introduced by the respective parties, and the case was fairly submitted to the jury with full and adequate instructions in which we discover no substantial error. The evidence was more or less conflicting, but it clearly presented subordinate questions of fact bearing on the main questions at issue, which were solely for the consideration of the jury. The main contention was as to the second specified question, viz: Whether or not the alleged codicil of August 15, 1891, was executed by the testator? The alleged signature of the testator to that paper was not attested by any subscribing witness. On the part of the plaintiffs, testimony tending to prove the genuineness of the signature was introduced. On the other hand, the testimony of the defendants tended to prove the contrary, and one of their requests for charge was: "If the jury find that A. Taylor Hoopes did not sign the alleged codicil, dated August 15, 1891, the verdict must be for the defendants on the second issue, and it will not be necessary for them to consider and determine any of the other issues in the case." The learned trial judge affirmed this point, and said: "It has reference to the second issue in the case,

and that is whether or not the alleged codicil, dated August 15, 1891, was executed by the said A. Taylor Hoopes. If you find that he did not execute that codicil, then your answer to that second question will be, ' We find that the alleged codicil, dated August 15, 1891, was not executed by A. Taylor Hoopes ; ' and if you so find, it renders it unnecessary for you to consider the other questions," etc.

Guided by this, and other proper instructions, the jury found specifically for the defendants—on the second question alone— "That A. Taylor Hoopes did not execute the alleged codicil dated August 15, 1891." That there was an abundance of evidence to justify this finding, no one who reads the testimony can for a moment doubt. If it were necessary, we might further say, that the finding appears to be according to the decided weight of the evidence on that question.

The assignments of error are not confined to the only issue of fact upon which the jury passed, and which alone is now before us for review. In so far therefore as they relate to other questions, not directly or indirectly involved in this appeal, it is unnecessary to consider them further than to say there is nothing in either of them that can possibly have any effect on the validity of the judgment from which this appeal was taken. As already intimated, we find no error in any of the specifications relating to the questions before us. There is nothing in either of them that requires further notice.

Judgment affirmed.